Limor Lehavi (SBN 189054)
   llehavi@lslawoffices.com
LEHAVI STARGARDTER, LLP
P.O. Box 5973
Orange, CA 92863
T: (949) 570-9575
F: (949) 570-9580

Attorneys for Plaintiff
KINSALE INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| KINSALE INSURANCE COMPANY, a Pennsylvania corporation,<br><br>       Plaintiff,<br><br>v.<br><br>ASSOCIATED INDUSTRIES INSURANCE COMPANY, INC., a Florida corporation,<br><br>       Defendant. | CASE NO. 3:23-cv-00214<br><br>**KINSALE INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY RELIEF AND EQUITABLE CONTRIBUTION** |

Plaintiff KINSALE INSURANCE COMPANY for its Complaint for Declaratory Judgment and Equitable Contribution against Defendant Associated Industries Insurance Company, Inc., alleges as follows:

## PARTIES

1.     Plaintiff Kinsale Insurance Company ("Kinsale") is a corporation organized and incorporated under the laws of the State of Arkansas, with its principal place of business in Little Rock, Arkansas. Kinsale is an excess and surplus lines insurer on the List of Approved Surplus Lines Insurers authorized to do business in California, and was doing so at all times mentioned in this Complaint. Kinsale insured Contra Costa Roofworks, Inc. ("CCR") as the named insured on a series of commercial general liability insurance policies, more specifically identified below.

2.     Defendant Associated Industries Insurance Company, Inc. ("Associated") is a corporation

organized and incorporated under the laws of the State of Florida with its principal places of business at 903 N.W. 65th Street, Boca Raton, Florida.

3.     Associated insured CCR as the named insured on a series of commercial general liability insurance policies issued subsequent to Kinsale's, more specifically identified below.

## JURISDICTION AND VENUE

4.     Jurisdiction of this action is founded upon Title 28 U.S.C. § 1332, as there is complete diversity of citizenship between Plaintiff and Defendant in this matter and the amount in controversy exceeds the sum of $75,000, exclusive of interest and cost. This Court also has jurisdiction over this claim under the Declaratory Judgment Act (28 U.S.C. § 2201) regarding the scope and extent of insurance coverage provided under the Associated commercial general liability policies to defend and indemnify CCR in an underlying construction defect lawsuit filed in the Superior Court of California, County of Alameda, as more particularly described below.

5.     Venue is proper in the Northern District of California, pursuant to Title 28 United States Code section 1391(b), because a substantial part of the events or omissions giving rise to this claim occurred in the County of Alameda, and the underlying lawsuit was prosecuted in the County of Alameda, which is situated in this district.

## NATURE OF THE CASE

6.     This lawsuit is an insurance coverage action arising from an underlying construction defect lawsuit styled *Arcadia Homeowners Association v. Contra Costa Roofworks, Inc., et al.*, Alameda County Superior Court, Case No. RG20056956 (the "Underlying Lawsuit"). A true and correct copy of the complaint in the Underlying Lawsuit is attached hereto as **Exhibit A**.

7.     The plaintiff in the Underlying Lawsuit, Arcadia Homeowners Association ("Arcadia HOA"), and its members, own real property located at 877 Howe Street in Oakland, California, which consists of a three-story, wood-frame, stucco-clad building containing 33 residential condominiums constructed over a single-story parking structure ("the Premises").

8.     The Underlying Lawsuit alleges that the Premises experienced multiple roof leaks with consequential interior water damage following CCR's replacement of the roof. The Underlying Lawsuit contains no allegations indicating when the water damage occurred.

9.     Kinsale defended and indemnified CCR in the Underlying Lawsuit, while Associated declined to defend or indemnify CCR in the Underlying Lawsuit. Kinsale thus brings this lawsuit to recover contribution from Associated for defense and settlement costs incurred on behalf of the mutual insured.

**A.     The Underlying Lawsuit**

10.     On March 3, 2020, Arcadia HOA filed the Complaint in the Underlying Lawsuit against named defendants CCR; HC Company, L.P; Carol Van Bourg AKA Carol Van Bourg Melton; The Van Bourg Trust U/T/D 2/1/92; Amended and Restated, April 20, 2007. The Complaint asserted claims for Negligence, Breach of Contract, Breach of Implied Warranty, and Breach of Express Warranty against CCR.

11.     The Underlying Lawsuit sought damages, including reconstruction, restoration and repair costs, as well as attorneys fees and investigation costs from CCR on the grounds that CCR negligently planned, designed, improved, constructed, converted, inspected, installed, repaired and replaced the roof membranes and underlayment, sheet metal, waterproofing and framing components of the roof at the Premises, and in so doing, CCR failed to use adequate materials, products, goods, devices, and procedures so that those elements of the roof and related assemblies have not functioned or performed properly and have caused consequential damage to the improvements and personal property of the residential units located at the Premises, with associated loss of use and costs to repair the conditions created by CCR.

**B.     Associated Refuses To Defend The Underlying Lawsuit**

12.     Associated issued a series of insurance policies to named insured CCR, in effect from October 13, 2017 to October 13, 2021.

13.     Despite the fact that property damage was discovered in April 2018, well into the Associated policy periods, Associated disclaimed coverage in August 2019, for the claims asserted in the Underlying Lawsuit before the suit was even filed. Despite the filing of the Underlying Lawsuit, and numerous requests by Kinsale that Associated participate in the defense and settlement of the mutual insured in the Underlying Lawsuit, Associated refused. Associated did not issue an updated coverage position, did not respond to Kinsale's entreaties, and did not participate in settlement or defense on

behalf of the mutual insured CCR.

14.    Associated contends that it was entitled to disclaim coverage because its policies allegedly contained an *exclusion* from coverage which states:

EXCLUSION – CONTINUOUS, PROGRESSIVE OR REPEATED OFFENSES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Exclusion is added to Section I – COVERAGES, paragraph 2. Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, and paragraph 2 Exclusions of COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY:

2.  Exclusions

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" including continuous, progressive or repeated "bodily injury", "property damage", or "personal and advertising injury"

Continuous, Progressive or Repeated Offenses:

(1) that first occurs, in whole or in part, prior to the effective date of this policy;

(2) first occurs, in whole or in part, prior to the effective date of this policy and also occurs during the policy period;

(3) first occurs, in whole or in part, prior to the effective date of this policy, also occurs during the policy period, and ceases to occur after the expiration or cancellation of this policy; or

(4) first occurs, in whole or in part, after the expiration or cancellation date of this policy; or

(5) is alleged in a "suit" against any insured where the filing date of the original complaint or other pleading initiating that "suit" is a date preceding the effective date of this policy, regardless of whether any insured was named as a party to, or was served with process regarding, that "suit" prior to the effective date of this policy.

The exclusions stated in Paragraphs (1), (2), (3), (4) and (5) apply regardless of whether the "bodily injury", "property damage", or "personal and advertising injury" was or is known or unknown by any Insured.

For purposes of the exclusions stated in Paragraphs (1), (2), (3), (4) and (5), in the event of continuous, progressive or repeated "bodily injury", "property damage", or "personal and advertising injury" over any length of time, such "bodily injury" or "property damage" shall be deemed to be one "occurrence" and shall be deemed to occur at the time the "bodily injury", "property damage" or "personal and advertising injury" first begins.

/ / /

COMPLAINT                    4                    CASE NO. 3:23-cv-00214

**C.**    **Kinsale Defends And Indemnifies CCR In The Underlying Lawsuit**

15.    Kinsale issued a series of insurance policies to named insured CCR, in effect from October 13, 2014 to October 13, 2017.

16.    Kinsale agreed to defend CCR, in the Underlying Lawsuit subject to a reservation of rights.

17.    On May 5, 2022, the Underlying Lawsuit settled following an arms-length mediation.

18.    Kinsale paid $245,000.00 in settlement of the Underlying Lawsuit on behalf of CCR. In addition, Kinsale paid $70,882.85 in defense costs.

19.    Based on the allegations of the Underlying Lawsuit and facts known to Associated, Associated cannot meet its burden to establish the absence of any potentially covered "property damage" occurring during its policy periods as required for a disclaimer of the duty to defend on the basis of application of a policy exclusion. For this reason, Associated owed a duty to defend and settle on behalf of CCR.

**FIRST CAUSE OF ACTION**

**(Declaratory Relief – Duty to Defend)**

20.    Kinsale refers to the allegations contained in paragraphs 1 through 19 and incorporates them by reference as though fully set forth herein.

21.    Kinsale paid attorneys' fees, experts' fees, costs and expenses to defend CCR in the Underlying Lawsuit

22.    Kinsale contends that:

(a) Associated had a duty to defend its insured, CCR, in the Underlying Lawsuit;

(b) Associated is required to reimburse Kinsale for the fees and costs Kinsale paid to defend CCR in the Underlying Lawsuit.

23.    Associated disputes these contentions.

24.    An actual controversy exists between the parties regarding the duty to defend CCR in the Underlying Lawsuit.

25.    An adjudication of this controversy is necessary so that the parties may determine their respective obligations under the subject insurance policies.

**SECOND CAUSE OF ACTION**

**(Declaratory Relief – Duty to Indemnify)**

26.     Kinsale refers to the allegations contained in paragraphs 1 through 25, and incorporates them by reference as though fully set forth herein.

27.     Kinsale paid sums to settle the Underlying Lawsuit on behalf of CCR.

28.     Kinsale contends that:

(a) Associated had a duty to indemnify its insured, CCR, in the Underlying Lawsuit;

(b) Associated is required to reimburse Kinsale for the sums Kinsale paid to settle the Underlying Lawsuit on behalf of CCR.

29.     An actual controversy exists between the parties regarding the duty to indemnify CCR in the Underlying Lawsuit.

30.     An adjudication of this controversy is necessary so that the parties may determine their respective obligations under the subject insurance policies.

**THIRD CAUSE OF ACTION**

**(Equitable Contribution)**

31.     Kinsale refers to the allegations contained in paragraphs 1 through 30, and incorporates them by reference as though fully set forth herein.

32.     Associated had a duty to defend CCR against the claims alleged in the Underlying Lawsuit, but refused to defend CCR. By reason of the failure by Associated to defend CCR, Kinsale has incurred attorneys' fees, experts' fees and litigation costs reasonably and necessarily required to defend CCR in the Underlying Lawsuit, and in excess of its fair share of the parties' common obligation to their common insured. Accordingly, Kinsale seeks equitable contribution from Associated, who should be ordered to reimburse and pay Kinsale for sums paid by Kinsale to defend and indemnify CCR.

**PRAYER FOR RELIEF**

WHEREFORE, Kinsale prays for the following relief:

**AS TO THE FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF**:

1.     For judicial declarations and order(s) that:

Associated had a duty to defend CCR in the Underlying Lawsuit;

**AS TO THE SECOND CAUSE OF ACTION FOR DECLARATORY RELIEF**:

2.      For judicial declarations and order(s) that:

Associated had a duty to indemnify CCR in the Underlying Lawsuit;

**AS TO THE THIRD CAUSE OF ACTION FOR EQUITABLE CONTRIBUTION**:

3.      For Judgment in favor of Kinsale and against Associated for equitable contribution, requiring Associated to pay Kinsale all amounts that Kinsale has paid to defend and indemnify CCR in the Underlying Lawsuit which exceed Kinsale's equitable share;

**AS TO ALL CAUSES OF ACTION:**

4.      For an award to Kinsale of prejudgment interest on the sums that Associated is required to pay to Kinsale, calculated from the date that each payment was made by Kinsale for CCR's defense and indemnity in the Underlying Lawsuit;

5.      For an award to Kinsale of its costs incurred in this litigation; and

6.      For an award to Kinsale of such other and further relief as it may deem just and proper.

Dated:    January 17, 2023                    LEHAVI STARGARDTER, LLP

                                      By:    _/s/ Limor Lehavi_
                                             Limor Lehavi
                                             Attorneys for Plaintiff
                                             KINSALE INSURANCE COMPANY

EXHIBIT A

Michael J. Cochrane, Esq., State Bar No. 118196
Gretchen W. Latimer, Esq., State Bar No. 160818
**HUGHES GILL COCHRANE TINETTI, P.C.**
2820 Shadelands Dr., Suite 160
Walnut Creek, California 94598
Telephone:     925-926-1200
Facsimile:     925-926-1202

Attorneys for Claimant
ARCADIA HOMEOWNERS ASSOCIATION

ENDORSED
FILED
ALAMEDA COUNTY

MAR 3 ~ 2020

CLERK OF THE SUPERIOR COURT
By_____
       AMRIT KHAN

# SUPERIOR COURT OF CALIFORNIA

# COUNTY OF CONTRA COSTA

## (UNLIMITED JURISDICTION)

| | |
|---|---|
| ARCADIA HOMEOWNERS ASSOCIATION,<br><br>                    Plaintiff.<br><br>vs.<br><br>CONTRA COSTA ROOFWORKS, INC.; HC COMPANY, L.P.; CAROL VAN BOURG AKA CAROL VAN BOURG MELTON; THE VAN BOURG TRUST U/T/D 2/1/92; AMENDED AND RESTATED, APRIL 20, 2007; and DOES 1 through 100, inclusive,<br><br>                    Defendants.<br>_____/ | Case No.:  RG20056956<br><br>**COMPLAINT FOR DAMAGES BASED UPON NEGLIGENCE, BREACH OF CONTRACT, BREACH OF IMPLIED WARRANTY, BREACH OF EXPRESS WARRANTY, NUISANCE, TRESPASS, INJUNCTIVE RELIEF** |

## GENERAL ALLEGATIONS

1.     At all times herein, mentioned Plaintiff Arcadia Homeowners Association ("Association") was, and is, a non-profit mutual benefit corporation duly organized and existing by virtue of the laws of the State of California, with its principal place of business located in the City of Oakland, County of Alameda, State of California.

---

**ARCADIA HOMEOWNERS ASSOCIATION COMPLAINT FOR DAMAGES**

1

1   2.  The Association and its members own real property located at 877 Howe Street in

2 the City of Oakland, Count of Alameda, California, which is further identified as Assessor's

3 Parcel Number 12-985-30 ("Association Property").

4   3.  The Association's real property consists of parcels and improvements including a

5 three-story, wood-frame, stucco-clad building containing thirty-three residential condominium

6 units ("Arcadia Condominium Building") constructed over a single-story parking structure at

7 grade.

8   4.  At all times herein mentioned, Defendant Contra Costa Roofworks, Inc.

9 ("Roofworks"), and DOES 1 through 50, was, and now is, a California corporation qualified to

10 do business, and actually doing business, in the State of California, including the City of Oakland

11 and County of Alameda, with its principal place of business located in the Concord, County of

12 Contra Costa, State of California.

13   5.  The Association does not know the true names, capacities, and identities, whether

14 corporate, partnership, individual, or otherwise, of Defendants sued herein as DOES 1 through

15 50, inclusive, and for this reason, the Association sues such defendants by such fictitious names

16 in accordance with *Civil Code of Procedure* § 474.  The Association is informed and believes,

17 and on that basis alleges, that each of the fictitiously named defendants is legally responsible for

18 the events and actions referred to in this Complaint and wrongfully caused injury and damages to

19 it, as alleged below.  The Association will seek leave to amend this Complaint to state these

20 defendants' true names and capacities when they are ascertained.

21   6.  Association is informed and believes and based thereon alleges that at all times

22 herein mentioned, each of the DOES 1 through 50, inclusive, was the agent and/or employee of

23 Roofworks, and was at all times herein mentioned acting within the course and scope of such

24 agency and employment, and each defendant has ratified and approved the acts of its agents and

25 employees.

26   7.  The Association is informed and believes and based thereon alleges that

27 Roofworks and each of the DOES 1 through 50, inclusive, is responsible and at fault in some

ARCADIA HOMEOWNERS ASSOCIATION COMPLAINT FOR DAMAGES

**EXHIBIT A - PAGE 9**

1    manner for the occurrences herein alleged and that Association's damages, as herein alleged,

2    were proximately caused by such Defendants, and each of them.

3        8.    The Defendant HC Company, L.P. was, and now is, a California limited

4    partnership qualified to do business, and actually doing business, in the State of California,

5    including the City of Oakland and County of Alameda, with its principal place of business

6    located in the City of Berkeley, County of Alameda, State of California, and Carol Van Bourg

7    aka Carol Van Bourg Melton; The Van Bourg Trust U/T/D 2/1/92; Amended And Restated,

8    April 20, 2007; and DOES 51 through 100 (collectively hereafter "Adjacent Property Owners")

9    were, and now are owners of real property located at 3873 Howe Street, 3871 Howe Street,

10   3867 Howe Street, 3865 Howe Street, and 3863 Howe Street, in the City of Oakland, County of

11   Alameda, California, which is further identified as Assessor's Parcel Number 012-0985-009.

12   The Adjacent Property Owners are responsible and at fault in some manner for the occurrences

13   herein alleged and Association's damages, as herein alleged, were proximately caused by such

14   Defendants, and each of them.

15       9.    The Association does not know the true names, capacities, and identities, whether

16   corporate, partnership, individual, or otherwise, of defendants sued herein as DOES 51 through

17   100, inclusive, and for this reason, the Association sues such defendants by such fictitious names

18   in accordance with *Civil Code of Procedure* § 474.  The Association is informed and believes,

19   and on that basis alleges, that each of the fictitiously named defendants is legally responsible for

20   the events and actions referred to in this Complaint and wrongfully caused injury and damages to

21   it, as alleged below.  The Association will seek leave to amend this Complaint to state these

22   defendants' true names and capacities when they are ascertained.

23       10.   The Association retained Roofworks to physically inspect the roof of the Arcadia

24   Condominium Building in order to evaluate and document the conditions of the roof.  Roofworks

25   reported that the roof contained fifty penetrations that required a sealant application, as well as

26   repairs to roof drains and roof flashings.

27   / / /

ARCADIA HOMEOWNERS ASSOCIATION COMPLAINT FOR DAMAGES                              3

11.    On December 13, 2012, Roofworks presented the Association with a document entitled "Low Sloped Roofing Proposal," and on January 29, 2013, the Association executed a document entitled "Roofing and General Contracting Services" provided by Roofworks.    The scope of work contained in the "Roofing and General Contracting Services" document was to remove the Arcadia Condominium Building's existing tar and gravel roof and flashings and replace it with a built-up roof ("Roof Replacement").    The Association executed the "Roofing and General Contracting Services" document, and Roofworks began to perform the Roof Replacement.    During the Roof Replacement work, Roofworks discovered dry rot affecting plywood roof sheathing and provided the Association with at least two change orders to repair the damaged plywood, completing the Roof project on or around April 24, 2013.

12.    Following the installation of the Roof Replacement, the Arcadia Condominium Building experienced multiple roof leaks with consequential interior water damage.    The multiple roof leaks caused severe interior damage to three units which required extensive water damage repairs.

13.    Roofworks returned to the project after completing the Roof Replacement on more than six occasions to repair roof leaks caused by defective materials and/or workmanship that was below the standard of care.

14.    On April 10, 2018, the Association retained construction consultants to perform site inspections and testing to evaluate and document the condition of the Roof Replacement installed by Roofworks.    The Association's construction consultants conducted several interior visual inspections related to the water intrusion occurrences and performed a visual inspection and survey of the roof at the Arcadia Condominium Building.    The Association's construction consultants performed water testing and destructive testing on the roof and stucco parapet roof assembly.

15.    The Association's construction consultants found that the Roof Replacement installed by Roofworks is not code compliant in that the finished roof was too flat, and that numerous examples of poor workmanship existed in the finished roof which created gaps and

openings through which water could and did intrude into the Arcadia Condominium Building's roofing substrate and building interior, causing actual physical damage to real property.

16.    The Adjacent Property Owners' property is located along the south side of the Association Property abutting the Arcadia Condominium Building's south wall.

17.    The Adjacent Property Owners' parcel contains bamboo growing along the property line that separates the Adjacent Property Owners' property from the Association's Property.

18.    On January 25, 2018, the Association's construction consultants provided the Association with a proposal to install a stucco weep screed and apply an Elastomeric paint on the south wall of the Arcadia Condominium Building.  In the process of preparing the stucco weep screed, the construction consultants discovered that bamboo planted on the Adjacent Property Owners' property had spread onto Association Property and intruded into the Arcadia Condominium Building's stucco wall behind the stucco wire lath and in some locations behind the weather barrier system causing the stucco to separate from the plywood sheathing.

19.    The Association's construction consultants documented that bamboo located on the property owned by the Adjacent Property Owners along the south side of the Association's property had encroached and grown onto the Association's property.  The bamboo was observed to have intruded onto Association Property and inserted itself behind the stucco cladding on the Association Condominium Building.  The bamboo shoots intruding behind the stucco cladding assembly extended two stories high and displaced the Arcadia Condominium Building's stucco cladding out of plane by as much as 1¼ inch. This displacement of the stucco cladding assembly separated the stucco from the substrate and caused the stucco to crack throughout the expanse of the wall exposing the weather barrier system.  The severity and extent of the damage to the weather barrier system, stucco cladding, and plywood sheathing rendered them ineffective as a water barrier and is a cause of the water intrusion and the resulting water damage to the Association Condominium Building and units.  In addition, the damage to the stucco assembly

/ / /

---

**ARCADIA HOMEOWNERS ASSOCIATION COMPLAINT FOR DAMAGES**

5

1    has resulted in a substantial decrease in the fire-resistive capacity of the Arcadia Condominium

2    Building, creating unsafe conditions for the residents of the Arcadia Condominium Building.

3          20.    The Adjacent Property Owners have a duty to prevent nuisances that could

4    adversely affect the property of an adjoining owner of land. In addition, the Adjacent Property

5    Owners have a duty to maintain shrubs and trees on their own property so as to prevent injury to

6    others or to the property of another.

7          21.    The Association has incurred substantial expense in investigating the cause of the

8    damage, making temporary repairs, and repairing individual units that were damaged after the

9    bamboo penetrated and damaged the Arcadia Condominium Building's exterior cladding. The

10   Association has incurred significant expenses to investigate the conditions and conduct

11   emergency temporary repairs.

12         22.    In addition, the Arcadia Condominium Building continues to be at risk for

13   additional damage because the Adjacent Property Owners have not eradicated the bamboo

14   growth along the property line adjacent to the south wall of the Arcadia Condominium Building.

15   There continues to be repeated encroachment of the Adjacent Property Owners' bamboo onto the

16   Association's Property which is a continuing nuisance and a continuing trespass.

17         23.    The Adjacent Property Owners failed to exercise ordinary care or skill in the

18   management of its property and failed to meet its common law duty to exercise reasonable care

19   to prevent damage to another's property.

20         24.    The Adjacent Property Owners are legally responsible for all costs the

21   Association has incurred as a result of the Adjacent Property Owners ' negligence in its planting

22   and maintenance of the bamboo.

23         25.    The Association and its members lost the use of the common area and several

24   individual units were required to be vacated during the remediation, abatement, and repair

25   process.

26         26.    The Association is informed and believes, and on that basis alleges, that the

27   bamboo encroachment was caused by the failure of the Adjacent Property Owners to properly

6

**ARCADIA HOMEOWNERS ASSOCIATION COMPLAINT FOR DAMAGES**

**EXHIBIT A - PAGE 13**

maintain their respective real property, as well as their respective failure to construct, maintain and repair real property improvements under their exclusive control.

## FIRST CAUSE OF ACTION
**(For Negligence against Roofworks and DOES 1 through 50, inclusive)**

27.     The Association incorporates and re-alleges, as though fully set forth herein, paragraphs 1 through 15.

28.     During the time that Roofworks, and DOES 1 through 50, was performing its Roof Replacement on the Arcadia Condominium Building, to the date of this Complaint, Roofworks, and DOES 1 through 50, negligently planned, designed, improved, constructed, converted, inspected, installed, repaired and replaced the roof membranes and underlayment, sheet metal, waterproofing, and framing components of the roofs located on the Arcadia Condominium Building and, in so doing, failed to use adequate materials, products, goods, devices, and procedures so that those elements of the roofs and related assemblies have not functioned or performed properly, and were and are defective so as to create unsafe and unhealthy conditions, and have caused consequential damage to the improvements and personal property of the residential units located at the Arcadia Condominium Building, with associated loss of use of property, and have caused the Association to incur costs to repair defective conditions created by Roofworks, and DOES 1 through 50, in excess of the minimum jurisdictional amount of the Court, according to proof at the time of trial.

29.     Roofworks, and DOES 1 through 50, failed to:

- Install roofing materials and products in conformance with all applicable code requirements, manufacturers' recommendations and requirements, and good construction practices;

- Perform its Roof Replacement in a manner consistent with the standard of care for roofing contractors working at the same time and place as Roofworks, and DOES 1 through 50;

/ / /

ARCADIA HOMEOWNERS ASSOCIATION COMPLAINT FOR DAMAGES

7

**EXHIBIT A - PAGE 14**

1

2

      •    Properly construct, supervise and inspect the Roof Replacement as to eliminate or mitigate the damages claimed herein;

3

4

5

      •    Ensure that Roofworks, and DOES 1 through 50, performed the Roof Replacement in accordance with applicable plans, specifications, product installation instructions, and building codes;

6

      •    Properly inspect, repair and maintain the Roof Replacement;

7

      •    Ensure that no defective conditions resulted from the Roof Replacement;

8

      •    Notify the Association of the existence of the defects.

9

10

11

12

    30.    Roofworks, and DOES 1 through 50, negligently planned and designed the Roof Replacement work so that the details, plans, and specifications provided and inspections performed were insufficient and inadequate, and Roofworks, and DOES 1 through 50, failed to warn the Association of potential and actual defects.

13

14

    31.    Roofworks, and DOES 1 through 50, had a duty to the Association to perform, with reasonable care, all of the foregoing acts.

15

16

17

18

19

20

21

22

23

24

25

26

    32.    As a direct and proximate result of the acts and omissions of Roofworks, and DOES 1 through 50, and each of them, the Association has incurred damage, including, without limitation, leaking, water staining, water damage to real property, inadequate ventilation, inadequate energy efficiency, accelerated deterioration of roofing and Arcadia Condominium Building components, and other damages which are currently unknown, thereby denying the Association the safe, complete, and undisturbed enjoyment and use thereof, and increasing the cost to the Association to repair the Arcadia Condominium Building roof, all to the Association's detriment, which damages far exceed the minimum jurisdictional amount of the Court. The Association has suffered further consequential damage to real property within the Arcadia Condominium Building as a result of acts and omissions by Roofworks, and DOES 1 through 50, in excess of the minimum jurisdictional amount of the Court, according to proof at the time of trial.

27

/ / /

---

**ARCADIA HOMEOWNERS ASSOCIATION COMPLAINT FOR DAMAGES**

8

1    WHEREFORE, the Association prays for judgment against Roofworks, and DOES 1

2    through 50, as hereinafter set forth.

3    **SECOND CAUSE OF ACTION**
     **(For Breach of Contract Against Roofworks and DOES 1 through 50, inclusive)**

4

5    33.    Association realleges and incorporates by reference each and every allegation

6    contained in paragraphs 1 through 15, and 27 through 33.

7    34.    Prior to Roofworks', and DOES 1 through 50's, Roof Replacement at the Arcadia

8    Condominium Building, the Association and Roofworks, and DOES 1 through 50, entered into a

9    written agreement wherein Roofworks, and DOES 1 through 50, agreed to perform the Roof

10   Replacement at the Arcadia Condominium Building for an agreed-upon sum.

11   35.    Among other covenants, Roofworks, and DOES 1 through 50, agreed to construct

12   the Roof Replacement at the Arcadia Condominium Building free from defects and fit for its

13   intended purpose.  The Roof Replacement at the Arcadia Condominium Building was to have

14   been constructed with all appropriate and necessary labor and materials in accordance with the

15   plans and specifications and the applicable standards in the construction and roofing industry for

16   such work.  Attached to this Complaint as Exhibit A is a copy of the written contract.

17   36.    At no time did Association or Roofworks, and DOES 1 through 50, rescind the

18   Roof Replacement contract for the Arcadia Condominium Building.    Furthermore, the

19   Association has performed all conditions, covenants, and promises under the written agreement

20   on its part to be performed.

21   37.    Roofworks, and DOES 1 through 50, expressly warranted in writing to

22   Association that its Roof Replacement would be free from defects not inherent in the quality

23   required or permitted and that its work would conform with the requirements of the written

24   agreement, drawings, plans, specifications, manufacturer installation requirements and

25   guidelines, applicable building codes, and other contract documents so that work not conforming

26   to those requirements may be considered defective.

27   / / /

9

**ARCADIA HOMEOWNERS ASSOCIATION COMPLAINT FOR DAMAGES**

38.    The Association discovered the defects of the Roof Replacement enumerated in this Complaint and provided written and oral notice of the defects of the Roof Replacement to Roofworks, and DOES 1 through 50, in the manner proscribed by the written agreement.  The Association requested that Roofworks, and DOES 1 through 50, take action to adequately repair the defects and consequential damage caused by the defects, but Roofworks, and DOES 1 through 50, breached the terms of the written agreement by failing to improve, maintain or repair the defects in accordance with the terms of the written contract, resulting in a material breach of the written agreement.

39.    As a direct and proximate result of the breach by Roofworks, and DOES 1 through 50, the Association has been damaged in excess of the jurisdictional amount of the Court, representing the reasonable cost of the reconstruction, restoration, and repair of the Roof Replacement at the Arcadia Condominium Building, and the amount of money improperly charged by Roofworks, and DOES 1 through 50, to the Association in excess of the amount due Roofworks, and DOES 1 through 50, pursuant to the written agreement.  The Association will establish the precise amount of its damages according to proof at the time of trial.

WHEREFORE, the Association prays for judgment against Roofworks, and DOES 1 through 50, as hereinafter set forth.

### THIRD CAUSE OF ACTION
**(For Breach of Implied Warranty against Roofworks and DOES 1 through 50, inclusive)**

40.    The Association realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 15, and 27 through 39.

41.    At the time Roofworks, and DOES 1 through 50, began the Roof Replacement at the Arcadia Condominium Building, Roofworks, and DOES 1 through 50, impliedly warranted to Association that the work would be free from defects and fit for its intended purpose, and was capable of being maintained through a normal maintenance program.

42.    The Association relied upon the skill and judgment of Roofworks, and DOES 1 through 50, to select, provide and install products, materials and goods, and to perform work

ARCADIA HOMEOWNERS ASSOCIATION COMPLAINT FOR DAMAGES

**EXHIBIT A - PAGE 17**

1    suitable to improve and construct the Roof Replacement at the Arcadia Condominium Building

2    free from defects and fit for reasonable use.

3        43.    The Association discovered the defects of the Roof Replacement enumerated in

4    this Complaint and provided written and oral notice to Roofworks, and DOES 1 through 50, of

5    the breach of implied warranties, and the defects in the manner proscribed by the written

6    agreement.  Roofworks, and DOES 1 through 50, ultimately refused to perform repairs pursuant

7    to its implied warranty.

8        44.    As a direct and proximate result of the breach of the implied warranties,

9    Association has been damaged and will be further damaged by the expenditure of certain monies

10    for repair, restoration, and replacement of the damaged and defective conditions enumerated in

11    this Complaint, and for damage caused by or as a result of the defects.  The Association alleges

12    that the damages it has sustained as a consequence of the breach of warranties far exceed the

13    minimum jurisdictional amount of the Court, according to proof at the time of trial.

14        WHEREFORE, the Association prays for judgment against Roofworks, and DOES 1

15    through 50, as hereinafter set forth.

16    **FOURTH CAUSE OF ACTION**

**(For Breach of Express Warranty Against Roofworks and DOES 1 through 50, inclusive)**

17

18        45.    The Association realleges and incorporates by reference each and every allegation

19    contained in paragraphs 1 through 15, and 27 through 44.

20        46.    Roofworks, and DOES 1 through 50, and each of them, expressly warranted to the

21    Association that the Roof Replacement at the Arcadia Condominium Building would be free

22    from defects and fit for ordinary residential purposes and/or that the work and services

23    performed by them, and/or the materials supplied or manufactured by them, would be free from

24    defects and/or fit for ordinary residential use, and Roofworks, and DOES 1 through 50, assigned

25    all such express warranties and guarantees to the Association at the completion of the Roof

26    Replacement for the Arcadia Condominium Building.

27    / / /

47.     The Association relied on the skill and judgment of Roofworks, and DOES 1 through 50, and each of them, to select and provide products, materials and goods, and to perform or have performed work suitable to improve, construct, maintain and repair the Roof Replacement at the Arcadia Condominium Building free from defects and fit and safe for ordinary residential use.

48.     After the Association discovered said damages to the Arcadia Condominium Building and/or defects within the time, manner and form prescribed by law, notice was given to Roofworks, and DOES 1 through 50, orally and in writing, of the breach of said express warranties. Roofworks, and DOES 1 through 50, ultimately refused to perform repairs pursuant to its expressed warranty. Roofworks, and DOES 1 through 50, refused to return to the project in 2019 and perform repairs pursuant to the express warranty.

49.     As a direct and proximate result of the breach of said express warranties, the Association has been damaged and will be damaged by the expenditure of certain monies for repair, installation and/or replacement of the defects as aforesaid, and by damage and harm caused by or as a result of said defects. The Association is informed and believes, and thereon alleges, that such costs far exceed the minimum jurisdictional amount of this Court, according to proof at time of trial.

WHEREFORE, the Association prays for judgment against Roofworks, and DOES 1 through 50, as hereinafter set forth.

**FIFTH CAUSE OF ACTION**
**(For Negligence Against HC COMPANY, L.P.; CAROL VAN BOURG**
**AKA CAROL VAN BOURG MELTON; THE VAN BOURG TRUST U/T/D 2/1/92;**
**and DOES 51 through 100, inclusive)**

50.     The Association incorporates herein by reference in this cause of action the allegations contained in paragraphs 1 through 3 and 16 through 26.

51.     Adjacent Property Owners, and DOES 51 through 100, inclusive, owed a duty to the Association to exercise reasonable care in the use and maintenance of their respective properties and to not cause or contribute to damage to their adjoining neighbor's property. This

ARCADIA HOMEOWNERS ASSOCIATION COMPLAINT FOR DAMAGES

**EXHIBIT A - PAGE 19**

1     duty required Adjacent Property Owners, and DOES 51 through 100, inclusive, to at all times

2     use reasonable care in the maintenance of their respective properties.

3          52.     The Association is informed and believes, and based on this information and

4     belief alleges, that Adjacent Property Owners, and DOES 51 through 100, inclusive, breached its

5     duty to the Association by allowing bamboo growth to encroach and penetrate the Arcadia

6     Condominium Building interior envelope by failing to properly control the encroaching bamboo.

7          53.     As a direct and legal result of the negligence of the Adjacent Property Owners and

8     DOES 51 through 100, inclusive, the bamboo caused significant actual physical damage to the

9     Arcadia Condominium Building envelope and common area of the Arcadia Condominium

10    Building.

11         54.     As a direct and legal result of Adjacent Property Owners', and DOES 51 through

12    100's, inclusive, negligent acts, the Association has suffered actual damages which includes, but

13    is not limited to, investigative costs, the cost of installing temporary emergency repairs, and the

14    estimated cost of permanent repair, which the Association is informed and believes, and thereon

15    alleges, that such costs far exceed the minimum jurisdictional amount of this Court, according to

16    proof at time of trial.

17         55.     The Association has sustained additional damage in that it has lost the use and

18    enjoyment of its common area and residential units due to the severity and extent of the damage

19    to the weather barrier system and exterior plywood sheathing, which rendered them ineffective,

20    causing actual damage to the Arcadia Condominium Building's exterior cladding, including

21    reducing the fire resistiveness of the building, causing water intrusion and related damage, and

22    creating a threat to the health, safety, and welfare of the Association's members.

23         56.     At all times, the Association has acted reasonably in the ownership and

24    maintenance of its real property and has taken all reasonable precautions to avoid or reduce any

25    actual or potential damage to its common area.

26    / / /

27    / / /

**ARCADIA HOMEOWNERS ASSOCIATION COMPLAINT FOR DAMAGES**

57.    The Association's damages are in an amount well in excess of the jurisdiction of this Court which the Association is informed and believes, and thereon alleges, that such costs far exceed the minimum jurisdictional amount of this Court, according to proof at time of trial.

WHEREFORE, the Association prays for judgment against Adjacent Property Owners, and DOES 51 through 100, as hereinafter set forth.

### SIXTH CAUSE OF ACTION
**(For Nuisance Against HC COMPANY, L.P.; CAROL VAN BOURG AKA CAROL VAN BOURG MELTON; THE VAN BOURG TRUST U/T/D 2/1/92; and DOES 51 through 100, inclusive)**

58.    The Association incorporates herein by reference in this cause of action the allegations contained in paragraphs 1 through 3, 16 through 26, and 50 through 57.

59.    Adjacent Property Owners, and DOES 51 through 100, inclusive, have built, constructed, owned, occupied, used, controlled and/or maintained the real property identified as APN No. 012-0985-009 in such a manner as to constitute a continuing private nuisance to the Association and its membership.

60.    Adjacent Property Owners', and DOES 51 through 100's, inclusive, failure and refusal to maintain the bamboo located on their property and the encroaching bamboo roots and shoots constitutes a nuisance within the meaning of *Civil Code* § 3479, in that Adjacent Property Owners, and DOES 51 through 100, inclusive, have allowed the bamboo on their property to grow onto the Association's Property, causing actual damage to the Arcadia Condominium Building's exterior cladding, including reducing the fire resistiveness of the building, causing water intrusion and related damage, and creating a threat to the health, safety, and welfare of the Association's members.    The encroachment of the bamboo onto the Association's Property obstructs the free use of Association land and building, negatively impacting property rights of the Association's members.

61.    Adjacent Property Owners, and DOES 51 through 100, inclusive, negatively interfered with and damaged the Association and denied its membership of the private use and enjoyment of its real property.

62.    The interference was substantial, unreasonable, and is continuous and progressive.

63.    The bamboo encroachment caused by the Adjacent Property Owners, and DOES 51 through 100, inclusive, constitutes a nuisance within the meaning of *Civil Code* § 3479 in that the conditions created by the bamboo encroachment obstruct the free use of the Association's Property, interferes with the comfortable enjoyment of its property, and has caused actual physical and substantial damage to the Association's Property and will be shown in an amount according to proof at trial.

64.    As a direct and legal result of the conduct of the Adjacent Property Owners, and DOES 51 through 100, inclusive, as alleged herein, the Association and its membership have suffered and continue to suffer, damages including but not limited to the cost incurred in performing investigation, temporary emergency repair measures, the cost incurred in permanently repairing its property, loss of use of its property, and other economic and consequential damages, in an amount well in excess of the jurisdiction of this Court to be shown in an amount according to proof at trial.

WHEREFORE, the Association prays for judgment against Adjacent Property Owners and DOES 51 through 100, as hereinafter set forth.

**SEVENTH CAUSE OF ACTION**
**(For Trespass Against HC COMPANY, L.P.; CAROL VAN BOURG**
**AKA CAROL VAN BOURG MELTON; THE VAN BOURG TRUST U/T/D 2/1/92;**
**and DOES 51 through 100, inclusive)**

65.    The Association incorporates herein by reference in this cause of action the allegations contained in paragraphs 1 through 3, 16 through 26, and 50 through 64.

66.    Adjacent Property Owners, and DOES 51 through 91, inclusive, have wrongfully trespassed on the Association's Property through the encroachment of bamboo, in that the bamboo roots and shoots from APN No. 012-0985-009 have encroached onto the Association's Property without the Association's permission or consent.

67.    As a result of the continuing trespass, the Arcadia Condominium Building's exterior cladding has been severely damaged and is structurally compromised.    This has

**ARCADIA HOMEOWNERS ASSOCIATION COMPLAINT FOR DAMAGES**
**EXHIBIT A - PAGE 22**

1    damaged the interior of Association members' units, requiring them to vacate their units and

2    conduct extensive repairs.

3        68.    The Association has requested that the Adjacent Property Owners, and DOES 51

4    through 100, inclusive, remove the encroaching bamboo from the Adjacent Property Owners'

5    property and the bamboo that has encroached onto the Association's Property.

6        69.    The Adjacent Property Owners, and DOES 51 through 100, inclusive, have not

7    fully eradicated the bamboo from APN No. 012-0985-009, and it continues to regrow and

8    encroach from their property onto the Association's Property.

9        70.    As a direct and legal result of this trespass, the Association has suffered damages,

10    which is the cost of investigation, installing temporary protective measures, as well as

11    permanently repairing and abating the trespass and will be shown in an amount according to

12    proof at trial.

13        71.    The Association and its members have sustained further damage in that they have

14    lost the use and enjoyment of their real property and their real property has lost value due to the

15    encroaching bamboo and the trespass, causing actual damage to the Arcadia Condominium

16    Building's exterior cladding, including reducing the fire resistiveness of the building, causing

17    water intrusion and related damage, and creating a threat to the health, safety, and welfare of the

18    Association's members.

19        72.    The Association's damages are in an amount well in excess of the jurisdiction of

20    this Court and will be shown in an amount according to proof at trial.

21        WHEREFORE, the Association prays for judgment against Adjacent Property Owners,

22    and DOES 51 through 100, as hereinafter set forth.

23                            **EIGHTH CAUSE OF ACTION**
        **(For Injunctive Relief against HC COMPANY, L.P.; CAROL VAN BOURG**
24      **AKA CAROL VAN BOURG MELTON; THE VAN BOURG TRUST U/T/D 2/1/92;**
                    **and DOES 51 through 100, inclusive)**
25

26        73.    The Association incorporates herein by reference in this cause of action the

27    allegations contained in paragraphs 1 through 3, 16 through 26, and 50 through 72.

16

ARCADIA HOMEOWNERS ASSOCIATION COMPLAINT FOR DAMAGES

**EXHIBIT A - PAGE 23**

74.    The Association has requested that the Adjacent Property Owners, and DOES 51 through 100, inclusive, take appropriate action to eradicate the bamboo growth and stabilize their property to prevent further bamboo encroachment from their property in order to prevent further damage to the Association's Property, but the Adjacent Property Owners, and DOES 51 through 100, inclusive, have failed and refused to take such actions, and have refused and continue to refuse to abate these nuisances.

75.    The Adjacent Property Owners, and DOES 51 through 100, inclusive, have threatened and will, unless restrained by this Court, continue to maintain the nuisances and continue the acts complained of above.  As such, each and every act has been, and will be, without the consent and against the will of the Association and in violation of the Association's rights.

76.    As a direct and proximate result of the actions of the Adjacent Property Owners, and DOES 51 through 100, inclusive, the eradication of the bamboo and stabilization measures are needed on the Adjacent Property Owners' property to reduce and mitigate the damages already incurred by the Association.

77.    Unless the Adjacent Property Owners, and DOES 51 through 100, inclusive are restrained by order of this Court, it will be necessary for the Association to commence successive lawsuits against the Adjacent Property Owners, and DOES 51 through 100, inclusive, to secure compensation for damages sustained, thus requiring a multiplicity of lawsuits, and the Association will be daily threatened with the instability of their property due to the lack of adequate measures by the Adjacent Property Owners, and DOES 51 through 100, inclusive, to properly stabilize its property and the encroaching bamboo.

78.    Unless the Adjacent Property Owners, and DOES 51 through 100, inclusive, are enjoined from continuing their course of conduct, the Association and its membership will suffer irreparable injury; the usefulness and economic value of its common area property and members' property will be substantially diminished.  The Association cannot take permanent, corrective

/ / /

ARCADIA HOMEOWNERS ASSOCIATION COMPLAINT FOR DAMAGES

**EXHIBIT A - PAGE 24**

actions on its property until the Adjacent Property Owners, and DOES 51 through 100, inclusive, remove the invasive condition from their property.

79.    The Association has no plain, speedy or adequate remedy at law.  Injunctive relief is expressly authorized by California *Code of Civil Procedure* §§ 526 and 731.

WHEREFORE, the Association prays for judgment as follows:

1.    For general and special damages according to proof, including but not limited to the cost incurred by the Association in investigation, installing temporary emergency repair measures, the cost of designing and installing permanent repair measures, loss of use damages, diminution in value damages, and damages representing the cost of financing the temporary and permanent repairs;

2.    For money damages including, but not limited to, expert consultant and investigative fees incurred by the Association in order to determine the nature of the damages at its property, and the appropriate method of repairing the damages;

3.    For prejudgment interest according to proof; and

4.    For such other and further relief as this Court may deem just and proper.

DATED: March 3, 2020                    HUGHES GILL COCHRANE TINETTI, P.C.

By: _____
    Michael A. Cochrane
    Gretchen W. Latimer
    Attorneys for
    ARCADIA HOMEOWNERS ASSOCIATION

# EXHIBIT A

01/29/2013  12:37  5108910440                    KEMA                              PAGE  01/01



## Roofing and General Contracting Services

December 13, 2012

Arcadia Homeowners Association
c/o Bay Area property Services
1661 Tice Valley Blvd, Suite 200
Walnut Creek, CA 94596

### LOW SLOPED ROOFING PROPOSAL

1. Remove and legally dispose of the one known layer of existing tar & gravel roofing and flashings. If additional layers of roofing exist, they must be removed also, at an additional charge. A change order accepting the necessary extra charges will be provided.
2. Inspect for dry rot and if any is discovered inform owner of additional charges to remove rot affected wood and replace with new lumber of like size and kind, primed and ready for paint.
3. Apply a spray coat of asphalt primer to all sheet metal flashings prior to their installation into the roof.
4. Install cant strips in all angles where none exists or replace where existing is damaged.
5. Install all prepared vents and pipe flashings.
6. Supply and install perallite recover board, raising the overall height of the flat roof approximately ¼" for every 2' of roofing. This will help with the overall drainage of the flat roofs.
7. Install new galvanized metal nosing at all perimeter edges of the new roof.
8. Apply fiberglass base sheet, lapping the seams by two inches, and nailing every 12" O.C. with simplex nails long enough to penetrate the sub-roof.
9. Install POLYGLASS brand torch applied modified bitumen mineral surface membrane by melting the asphalt backing and embedding the rolled material into the fiberglass base sheet, overlapping the successive courses according to the manufacturer's installation guidelines.
10. Remove all work related debris and leave job site in a clean condition upon completion of job.
11. Purchase any necessary building permit and schedule and pass all required inspections. The cost for time for getting the permit and the cost of the permit are NOT included in the price quoted below.

PRICE: $54,895.47

*ROOFWORKS is a Registered Polyglass Applicator*, so this new roof will be warranted by Polyglass to be free from defects caused by materials and workmanship for a period of TWELVE YEARS from the date of completion of this work. This is a material and labor no dollar limit warrantee backed by Polyglass.
This proposal includes all labor and materials to do the above-described work and does not include any additional work, which is not described in the text above. Payment in full is due and payable in full at the time of the completion of the above described work.

This price will be honored for 30 days from the date shown above.

Submitted by: Matt Wojcik

Accepted By                                          Date  1/29/2013

P.O. Box 21427 Concord CA 94521   TEL 925-671-7778   FAX 925-671-7677
Contractor License # 718230  B  C-39

**EXHIBIT A - PAGE 27**





Contra Costa

**ROOFWORKS**

Inc.

Invoice Date

4/24/2013

# Invoice

Invoice Number

6005

**BILL TO**

Arcadia HOA
c/o Bay Area Property Services
1661 Tice Valley Blvd
Walnut Creek CA 94597

**JOB NAME**

Arcadia HOA
3877 Howe Street
Oakland CA

| WORK DATE | ITEM | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 4/12/2013 | Change Order | #1: Additional work not included in the original Scope of Work, approved by the Owner or it's representative. Dry rot repairs to the sub-roof sheathing above units 308 & 309. | 4,095.00 |
| | Change Order | #2: Additional work not included in the original Scope of Work, approved by the Owner or it's representative. Dry rot repairs to the sub-roof sheathing. | 4,723.00 |
| | Change Order | #3: Additional work not included in the original Scope of Work, approved by the Owner or it's representative. Supplied and installed 5.25 inch fascia style rain gutters at the interior perimeter of the roof, including downspouts that are connected into the existing roof drainage plumbing, to minimize the pooling of water on the roof at the areas where no roof drains exist. This work and the roof work is complete! | 2,800.00 |

Please send your check to ROOFWORKS, PO BOX 21427, CONCORD CA 94521. Thank you!

**Total: $11,618.00**